IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK J. EUBANKS, Jr. | : | No. 4:CV 06-696 |
| Plaintiff, | : | Judge Jones |
| v. | : | |
| WEGMANS FOOD MARKETS, INC., | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

### August 28, 2006

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court Defendant Wegmans Food Markets, Inc.'s Motion to Dismiss ("the Motion")(doc. 7) filed on June 9, 2006. The Defendant moves this Court to dismiss Count III of the complaint for failure to state a claim upon which relief can be granted.

For the following reasons, the Motion (doc. 7) will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY:

Plaintiff Jack J. Eubanks, Jr. ("Plaintiff" or "Eubanks") initiated this action by filing a complaint (doc. 1) with this Court on April 4, 2006. The complaint, the Plaintiff, a former employee of Defendant Wegmans Food Markets, Inc.

1

("Defendant" or "Wegmans"), alleges that while in the employ of Wegmans he was subject to discrimination on the basis of his race and purports to state claims for relief under Title VII of the Civil Rights Act of 1964 (Count I); the Pennsylvania Human Relations Act ("PHRA")(Count II); and Intentional Infliction of Emotional Distress ("IIED")(Count III).

Plaintiff, an African-American, began employment with Defendant on October 11, 2005 and was assigned to work in the warehouse at Defendant's facility located in Pottsville, Pennsylvania. Plaintiff alleges that during his employment, from October 11, 2004 through December 20, 2004, he was continuously and on a daily basis subjected to "harassing, disparate, and discriminatory treatment, conduct, remarks, conversations, and comments by co-workers and supervisors derogatory of Black/African-American individuals." (Rec. Doc. 1 at 5).

Specifically Plaintiff alleges that a co-worker named "Renee" made a large majority of the racially discriminatory comments and remarks towards Plaintiff, including but not limited to calling Plaintiff a "nigger", telling Plaintiff "I know how you niggers are" and with clear racially derogatory implications telling Plaintiff to "stay in [his] place" and "you know what your place is." (Rec. Doc. 1 at 5). Plaintiff also alleges that "Renee" told him she was fired from her last job

for saying "its [sic] to feed the niggers." (Rec. Doc. 1 at 6).

Further, Plaintiff alleges that he was wrongfully accused of having threatened "Renee" when he told her to cease making the aforementioned racial comments. As a result, Plaintiff alleges he was suspended for three days while the matter was investigated and was placed on probation for six months afterwards. (Rec. Doc. 1 at 6). Further, "Renee" allegedly accused Plaintiff of being a racist and of scaring her. (Rec. Doc. 1 at 7). Plaintiff was allegedly told by his supervisor, Lance Miller, that he should "be professional" when trying to resolve the problem with "Renee." Miller allegedly told Plaintiff that "drug and alcohol counseling was available," although Plaintiff alleges he does not drink or use drugs. (Rec. Doc. 1 at 6).

Plaintiff alleges that he complained of the ongoing conduct to officials of the Defendant, including his immediate supervisor, Miller, the Human Resources Manager, and via the employee hotline for reporting acts of discrimination and harassment. In addition, Plaintiff alleges he wrote a letter seeking assistance directly from the corporate officers, which was ignored. Plaintiff alleges that no officials of the Defendant took any action to investigate or stop the conduct. (Rec. Doc. 1 at 7).

On or about December 20, 2004, Plaintiff alleges that it was "made clear" to

him that it could not be guaranteed by Defendant that the discriminatory and harassing behavior would end. Subsequently, Plaintiff left his job on the same date and he alleges he was constructively terminated from his employment based upon the unabated racial discrimination, harassment and retaliation of Defendant and its agents. (Rec. Doc. 1 at 7-8).

The Defendant filed the instant Motion (doc. 7) on June 9, 2006. The Motion has been fully briefed by the parties and is therefore ripe for our review.

**STANDARD OF REVIEW:**

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d4 310 (3d

Cir. 1986).

## DISCUSSION:

The Defendant moves this Court to dismiss Counts III of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Defendant argues that Plaintiff has not alleged sufficiently extreme and outrageous conduct to support a claim for IIED, and alternatively, that Plaintiff's IIED claim is barred by the Pennsylvania's Workmen's Compensation Act ("WCA") and the PHRA.

### A.   Rule 12(b)(6) Analysis

To establish a claim for IIED, a plaintiff must show that (1) the conduct of the defendant was intentional and reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. See Hoy v. Angelone, 554 Pa. 134 (1998). The plaintiff must demonstrate that the defendant's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 151. Furthermore, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Id. at 152 (quoting Cox v. Keystone Carbon, 861 F.2d 390, 395 (3d Cir. 1998). "Cases which have found a sufficient

5

basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." Anderson v. Deluxe Homes of Pa., 131 F. Supp. 2d 637, 658 (M.D. Pa. 2001)(quoting Hoy, 554 Pa. at 151).

Only in rare instances have Pennsylvania courts found conduct to be so extreme and outrageous as to support a claim for IIED in an employment context. Specifically and by way of example, outrageous conduct has been found where the employer has sexually harassed and retaliated against the employee. See Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307 (M.D. Pa. 1988). Notably the Pennsylvania Supreme Court has held that "retaliation is a critical and prominent factor in is assessing the outrageousness of an employer's conduct." Hoy, 554 Pa. at 153.

Clearly, the applicable case law creates a heavy burden for a Plaintiff seeking to establish an IIED claim in this type of filing. However, accepting Plaintiff's factual allegations as true, as we must at this juncture, it is clear that Plaintiff was subjected to repeated racially derogatory remarks by a co-worker. He has alleged conduct which indicates that the remarks were made with personal animus and furthermore, Plaintiff does assert an actual claim for retaliation under Title VII and the PHRA. It may well be that discovery will reveal that Plaintiff has not met the yeoman's task he has to preserve his IIED

count for a jury's consideration. But, we believe that justice dictates he be given the opportunity to flesh out this claim. Accordingly, we find it imprudent at this juncture to dismiss Plaintiff's claim for failure to state a claim upon which relief can be granted and deny Defendant's Motion on this ground.

**B.     Pennsylvania Workmen's Compensation Act**

The Defendant argues that the Plaintiff's IIED claim is barred by the WCA. In general, the WCA provides the exclusive remedy for all of an employee's work-related injuries. See 77 Pa. Const. Stat. § 481(a). However, the WCA provides one narrow exception, "the personal animus exception, for 'employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed at [the plaintiff] as an employee or because of his employment." Brooks v. Mendoza, 2002 U.S. Dist. LEXIS 4991, *8 (E.D. Pa. 2002). Particularly, in Price v. Philadelphia Electric Co., 790 F. Supp. 97 (E.D. Pa. 1992), the district court held that "the WCA does not bar [IIED] claims for racial harassment" by a fellow employee or third party. Id. at 100. Accordingly, we find that the Plaintiff's claim for IIED based on racial harassment is not *per se* barred by the WCA, and we will deny the Defendant's Motion on this ground.

**C.     The Pennsylvania Human Relations Act**

The Defendant also argues that § 962(b) of the PHRA bars the Plaintiff's

IIED claim because the bringing of an action under the PHRA "shall exclude any other action, civil or criminal based upon the same grievance of the complaint concerned." 43 Pa. Const. Stat. § 962(b). However, as stated by this Court in Keck v. Commercial Union Ins. Co., 758 F. Supp. 1034 (M.D. Pa. 1991)(Rambo, J.):

> if all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework.

Id. at 1039. The Court provided an example that fits the factual framework before us, "if an employer effected all of the elements of intentional infliction of emotional distress upon an employee and chose to do so because the employee was black, the employer may be found liable for discrimination as well as for intentional infliction of emotional distress." Id. at 1038.

Accordingly, we find that the Plaintiff's common-law claim for IIED is not necessarily barred by his PHRA claim, and accordingly, we shall dismiss the Defendant's Motion on this final ground as well.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant Wegmans Food Markets, Inc.'s Motion to Dismiss (doc. 7) is DENIED

_____
John E. Jones III
United States District Judge